STATE of Wisconsin, Plaintiff-Appellant,

v.

Gary J. BUCHEGER, Defendant-Respondent. [Case No. 88-0815.]

STATE of Wisconsin, Plaintiff-Appellant,

v.

Donn F. RENNING, Defendant-Respondent. [Case No. 88-0816.]

STATE of Wisconsin, Plaintiff-Appellant,

v.

Richard R. BARCUS, Defendant-Respondent. [Case No. 88-0817.]

STATE of Wisconsin, Plaintiff-Appellant,

v.

Jon A. JENSEN, Defendant-Respondent. [Case No. 88-0818.]

Court of Appeals

*Nos. 88-0815, 88-0816, 88-0817, 88-0818. Argued November 8, 1988.—Decided March 1, 1989.*

(Also reported in 440 N.W.2d 366.)

* See Callaghan's Wisconsin Digest, same topic and section number.

On behalf of the plaintiff-appellant, there were briefs filed by *Barbara A. Michaels,* assistant district attorney of Waukesha county. An amicus curiae brief was filed by *Donald J. Hanaway,* attorney general, and *Maryann Sumi,* assistant attorney general. There was oral argument by *Maryann Sumi,* assistant attorney general.

On behalf of the defendants-respondents, there was a brief and oral argument by *Michael E. Geary* of *Henry A. Tessmer Law Office* of Milwaukee.

504

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. These consolidated appeals raise the sole question of whether a violation of Wis. Adm. Code sec. **NR 10.12**(1)(h) requires proof that the hunter knew or should have known that a hunted area was baited. We conclude that a minimal level of scienter—knew or should have known—is required. Because the trial court did not make findings as to whether any of the defendants should have known that the area was baited, we reverse and remand.

We adopt the facts as stated by the trial court in its decision from the bench. The four defendants were hunting migratory birds at the proper time and with the proper licenses. A nearby farmer, not the defendants, put out bait. The baiting was not done for the purpose of hunting in general or hunting by the defendants specifically. The defendants did not know of the existence of the bait, nor was there any collusion between the farmer and the defendants in this regard.

The defendants were each issued citations by a conservation warden of the Department of Natural Resources (DNR) charging them with hunting by aid of bait contrary to Wis. Adm. Code sec. **NR 10.12**(1)(h). Following a trial to the court and extensive briefing and arguments, the trial court held that proof of scienter was required. The actions were dismissed for failure to prove this element.

The state appealed, and the case was originally placed on this court's expedited briefing and disposition calendar. Due to the nature of the issues, the appeal was removed from the expedited disposition calendar and ordered to be decided by a three-judge panel. The attorney general was invited to file a brief and did so. Oral argument was held in this court, after

which it was determined that the issue was appropriate for certification. Certification to the supreme court was refused.

The state argues that the plain language of the administrative regulation does not establish intent as an element. In addition to responding to this argument, the defendants also appear to suggest that the lack of an intent requirement is violative of due process. We do not address the constitutional issue as resolution of the statutory issue is both dispositive and preferable.[1] *See Grogan v. Public Serv. Comm'n*, 109 Wis. 2d 75, 77, 325 N.W.2d 82, 83 (Ct. App. 1982).

The relevant portion of Wis. Adm. Code sec. **NR 10.12**(1) is:

> **NR 10.12 Migratory game bird hunting.** (1) PROHIBITED METHODS. No person shall hunt any migratory game bird by any of the following methods:
>
> . . . .
>
> (h) *Baiting.* 1. By the use or aid of salt or shelled or shucked or unshucked corn, wheat or other grains or other feed or means of feeding similarly used to lure, attract or entice such birds to, on, or over the area where hunters are attempting to take them. A baited area is considered to be baited for 10 days after the removal of the bait.

Construction of administrative rules is governed by the same principles that apply to statutory construction. *State ex rel. Staples v. Young*, 142 Wis. 2d 348, 353, 418 N.W.2d 333, 336 (Ct. App. 1987). Construction of an

---

[1]*State v. Collova*, 79 Wis. 2d 473, 255 N.W.2d 581 (1977), and other cases have developed an analysis for determining whether scienter should be an element of an offense. However, *Collova* is applicable to laws involving legislative silence, *Id.* at 480, 255 N.W.2d at 584, whereas we are faced with legislative ambiguity.

administrative provision is a question of law. *Id.* We resolve such a question without deference to the trial court's decision. *Grand River Coop. v. Terbeest,* 145 Wis. 2d 173, 177, 426 N.W.2d 68, 70 (Ct. App. 1988). If an administrative rule is unambiguous, we look to the plain meaning of its terms. *Staples,* 142 Wis. 2d at 354, 418 N.W.2d at 336. Whether ambiguity exists is also a question of law which we decide without deference to the trial court. *Grand River Coop.,* 145 Wis. 2d at 177, 426, N.W.2d at 70. A rule is ambiguous only if reasonable persons can understand it differently. *Staples,* 142 Wis. 2d at 354, 418 N.W.2d at 336. We determine this by looking only to the statute and not to its legislative history or other extrinsic evidence. *See Grand River Coop.,* 145 Wis. 2d at 177–78, 426 N.W.2d at 70.

We have carefully considered the statutory language and concluded that the phrase "[b]y the use or aid of [bait]" is ambiguous when considering whether it implies knowledge by the hunter. Although "use of" suggests an active participation or cooperation between hunter and bait, "aid of" is less clear. As argued by the state, a hunter "can *unknowingly* be aided by a third party or another factor." (Emphasis in original.) As a result, reasonable people could disagree over the interpretation of Wis. Adm. Code sec. **NR 10.12**(1)(h).

Having concluded that the regulation is ambiguous, we turn to the question of its interpretation.[2]

---

[2]We decline to use State's Exhibit No. 2, entitled "1986 Wisconsin Bird Regulations," to aid us in the interpretation of the code. First, the exhibit was not included in the record. Second, the record does not identify which entity issued it. Finally, other than

Because of its similarity to the federal regulation, federal case law may be of persuasive value. *See Gygi v. Guest,* 117 Wis. 2d 464, 467, 344 N.W.2d 214, 216 (Ct. App. 1984).

In 1956, when the Wisconsin regulation was adopted, the federal regulation, 50 C.F.R. sec. 6.3(b) (1956), read in part as follows:

> Migratory game birds may not be taken—
>
> . . . .
>
> (8)   By the aid of salt, or shelled or shucked or unshucked corn, wheat, or other grains, or other feed or means of feeding similarly used to lure, attract, or entice such birds to, on, or over the area where hunters are attempting to take them.

21 Fed. Reg. 6595, 6597 (1956). In 1957, the following changes were proposed:

> Section 6.3 would be amended to impose additional restrictions on the methods by which migratory game birds may be taken—
>
> . . . .
>
> (c)   By prohibiting the taking of such birds on or over any place where salt or feed that may attract such birds has been placed at any time during or within 10 days prior to the open season on such birds.

22 Fed. Reg. 4456 (1957) (proposed June 21, 1957). However, when the amended regulation was released, the above change was not made. *See* 22 Fed. Reg. 6874 (1957).

In 1958, changes were again recommended:

---

one hunter's testimony that he had seen the pamphlet, all we have are *unsworn* statements that the pamphlet is distributed to all hunters.

Section 6.3(b)(9) would be amended to make more clear what constitutes the illegal taking of migratory game birds by bait. No substantive change is contemplated in the section.

23 Fed. Reg. 3275 (1958) (proposed May 9, 1958). The actual amended regulation was rephrased for clarity, but it also contained the "additional restriction" recommended in 1957–prohibiting the taking of birds "on or over" a baited area.[3] *See* 23 Fed. Reg. 6241 (1958). No changes relevant to our case have been made since. The current federal regulation, renumbered as 50 C.F.R. sec. 20.21(i), reads in part:

> No person shall take migratory game birds:
> . . . .
> (i) By the aid of baiting, or on or over any baited area. As used in this paragraph, "baiting" shall mean the placing, exposing, depositing, distributing or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed so as to constitute for such birds a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; . . . such [baited] area shall remain a baited area for 10 days following complete removal of all such corn, wheat or other grain, salt, or other feed.

As briefly outlined below, several federal cases have concluded that the added language "on or over any baited area" is a separate offense from hunting "by the aid of baiting." The courts have determined that different levels of scienter are required for each.

In *United States v. Bryson,* 414 F. Supp. 1068 (D. Del. 1976), the district court stated that a conviction for

[3]The ten-day restriction was not added until 1973. *See* 38 Fed. Reg. 22,021, 22,022 (1973).

hunting by aid of baiting required proof "that a hunter had some part, directly or indirectly, in the placing or exposing of the bait or, at the least, that the baiting was done for his benefit as a part of the hunting method." *Id.* at 1073. However, a conviction for hunting on or over a baited area is possible "even in the absence of any connection with the placing of the bait." *Id.*

Similarly, the Fourth Circuit was careful to limit its strict liability approach to the second prong: "Violating the regulation by shooting over a baited area requires no proof of a connection of the offender with the bait; a hunter is strictly liable for shooting on or over a baited area." *United States v. Chandler,* 753 F.2d 360, 363 (4th Cir. 1985). The Sixth Circuit, when finding strict liability, also took pains to note that the defendant had been convicted "only under the latter offense, taking migratory birds on or over a baited field." *United States v. Catlett,* 747 F.2d 1102, 1104 (6th Cir. 1984), *cert. denied,* 471 U.S. 1074 (1985).

From the above cases, we conclude that to hunt "by use or aid of bait" implies some level of scienter. Because most of the relevant federal cases deal with the "on or over" prong, which is not part of the Wisconsin regulations, very little law exists on what level of scienter should be required for the "by aid of" prong. The Fifth Circuit's opinion in *United States v. Delahoussaye,* 573 F.2d 910 (5th Cir. 1978), is helpful, although it is seemingly out of step with other circuits as it appears to require scienter for both prongs.

The *Delahoussaye* court concluded that a middle ground was most appropriate. Convicting someone who could not have ascertained the presence of bait because of a property line would be unjust, as would requiring the government to prove actual guilty knowledge. *Id.* at 912–13. The latter course would also have the ill effect

of removing all incentive for the hunter to make a reasonable search of the area for bait. *Id.* at 913. The Fifth Circuit thus concluded that "a minimum form of scienter—the 'should have known' form—is a necessary element of the offense." *Id.* at 912.

■

We consider the Fifth Circuit's reasoning to be persuasive and adopt it as the standard for a violation of Wis. Adm. Code sec. **NR 10.12**(1)(h). In order to prove that a defendant hunted by the use or aid of bait, the government will have to prove that the defendant knew or should have known that he or she was using bait or being aided by bait.

This is essentially the formulation of the element arrived at by the trial court in this case. The trial court explicitly found that the defendants did not know of the existence of the bait. This finding is not clearly erroneous. *See* sec. 805.17(2), Stats. However, no such findings regarding the objective test—whether the defendants should have known—were made. Accordingly, we reverse the orders of dismissal and remand to the trial court for the purposes of determining whether, on the basis of the testimony and evidence, any of the defendants should have known they were being aided by bait.

*By the Court.*—Orders reversed and cause remanded.